**Rex Daryl DAVENPORT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–17966.**

Court of Criminal Appeals of Oklahoma.

May 30, 1973.

Rehearing Denied June 18, 1973.

Kenneth G. Mayfield, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Rex Daryl Davenport, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Case No. CRF–72–1067, for the crime of Illegal Operation of a Police Radio While in the Commission of a Crime, to-wit: Illegal Possession of Marijuana. He was sentenced to serve a term of two (2) years in the State Penitentiary and pay a fine of two thousand dollars ($2,000) in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

At the trial, H. D. Neal, Oklahoma City Police Officer, testified that on May 2, 1972, he secured a search warrant for the defendant's premises at 3818 N.W. 31st street in ,Oklahoma City. According to Neal, at 10:00 p. m. on May 2, 1972, he and a fellow officer, Bennie Lovett, arrived at the above residence of defendant to serve said warrant. Neal stated that he parked in front of defendant's house and started up to the residence. When Neal

got to the front porch, defendant came out of the front door of the house. At this time, Neal advised defendant that he (Neal) had a search warrant for his residence, whereupon the officers and defendant entered the house. A copy of the warrant was served on defendant. Officer Neal, upon entering the house, observed three other people sitting in the living room. He further stated that he observed on an end table in the living room, a Realistic Brand Patrolman Pro-8 police receiver with an all-channel scanned. According to Neal, he could overhear the Oklahoma City Police Department's scout car frequency and also detective bureau frequency. Also on this end table lying right beside the receiver was a clear plastic baggy which contained a green leafy substance. Subsequently, the officers conducted a search of the residence. A white stationery envelope filled with a green leafy substance was found in a drawer; on a cushion on the couch in the living room were two handrolled cigarettes which also contained a green leafy substance; and, on a partition shelf were two pipes containing a burned green leafy residue. Neal then identified the substance in the baggy and the envelope as marijuana. According to Neal, no one in the house appeared to be under the influence of drugs, nor was the defendant actually seen near the receiver. Neal further stated that the people sitting in the living room were all in proximity to the receiver. Neal further stated that no drugs or marijuana were found on defendant. Neal also stated that he was informed by an informant that several other people had access to the residence in question, generally from 3:00 p. m. to midnight on a given day and that defendant was living with a girl at said residence.

Bennie Lovett, Oklahoma City Police Officer, testified in substance to the same events as did Officer Neal. Lovett also related to the court, as did Neal, his training in the field of narcotics.

The defendant did not testify in his own behalf, nor did he call any witnesses to testify.

Defendant contends that the court erred in overruling his motion to suppress evidence. Defendant argues that the affidavit for the search warrant did not state facts sufficient to constitute probable cause for the issuance of said warrant. The affidavit for search warrant provides, in relevant part, as follows:

"Affiant states that on 5–2–72, he received information from a heretofore proven reliable confidential informant who has proven to be reliable by furnishing affiant with other information which has resulted in drug cases being made on several persons. The informant stated that the informant has been in the above residence on several occasions in the past two weeks and had made drug purchases and has observed drugs being concealed and used in this residence. Affiant further states that the informant advised that the above occupant is at this time in possession of a large quantity of marijuana. Affiant further states that the informant has no felony convictions."

The Supreme Court has recognized that the constitutional requirement of probable cause can be satisfied by hearsay information, as opposed to the direct personal observations of the affiant. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As to what constitutes a substantial basis for crediting the hearsay, the Supreme Court has stated in United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965):

"This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See Aguilar v. Texas, supra. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are

detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. Jones v. United States, supra, 362 U.S. [257] at 270, 80 S.Ct. [725] at 735 [4 L. Ed.2d 697, at 707, 78 A.L.R.2d 233]."

In Guthrey v. State, Okl.Cr., 507 P.2d 556 (1973) we stated in the Syllabus:

"An affidavit for a search warrant based upon information received from a reliable informant should state the length of time the affiant has known the informant; that his reputation for truth and veracity was good; and that on a number of occasions past the informant has furnished information to the affiant which had been accurate.

"The affidavit should then set forth general instances in which the informant had previously furnished correct information.

"The affidavit should further state whether the informant himself observed the presence of contraband or articles to be seized upon the premises stating the date of the observation or that the belief of the reliable informant is based upon admission as one of the principals maintaining or keeping such contraband or articles on the premises."

■ In the instant case, the affiant stated that the informer had furnished him with other information which resulted in drug cases being made on several persons, and that the informant had no prior felony convictions. These statements are probative as to the informer's good reputation for truth and veracity as well as to instances in which the informant furnished correct and accurate information. The af-

fiant further stated that the informer had personally observed on several occasions during the two week period just prior to the affidavit, drug purchases, concealed drugs, and the use of drugs at the residence in question, and that the occupant of said residence was, on the date of the affidavit, in possession of marijuana. Although the affiant failed to state the length of time he had known the informant, we are of the opinion that the instant affidavit set forth sufficient grounds for the magistrate to consider the informant reliable and establish probable cause for the issuance of the warrant.

Defendant next contends that the evidence was insufficient to prove that he was guilty of the crime charged. Defendant sets forth four reasons for his assertion: 1) that the evidence was insufficient to prove that defendant had knowledge and control of the alleged marijuana; 2) that the evidence was insufficient to prove the substance was in fact marijuana; 3) that there was no evidence that defendant was operating the radio; and, 4) that the State did not introduce the radio receiver into evidence.

Title 21 O.S.1971, § 1214, in relevant part, states:

"It shall be unlawful for any person to operate a mobile radio capable of receiving transmissions made by any law enforcement agency for illegal purposes or while in the commission of a crime and not otherwise . . ."

As can be seen, the offense covered by this statute is the operation, not the mere possession, of the radio either for illegal purposes or while in the commission of a crime. The State contends that defendant was operating the radio while in the commission of the crime of illegal possession of marijuana. Did the State prove that the defendant had possession of marijuana? This Court stated in Osburn v. State, Okl.Cr., 497 P.2d 471 (1972):

". . . [P]roof of 'possession' requires proof that the accused person had knowledge that the contraband was

where it was found; and that he had control over the substance.

\*    \*    \*    \*    \*    \*

"The burden is not on defendant to prove lack of knowledge. That burden is on the state to prove sufficient facts from which knowledge could fairly be inferred."

In Sutterfield v. State, Okl.Cr., 496 P.2d 428 (1972), we cited the case of Riggs v. State, Okl.Cr., 486 P.2d 643 wherein we stated:

"Where a person is present in premises where marihuana is found, but does not have the exclusive access, use, or possession of the premises, it may not be inferred that he had knowledge of the presence of marihuana and had control of it unless there are additional independent factors showing his knowledge and control."

■ We are of the opinion that the evidence in the instant case, although circumstantial, does in fact establish sufficient additional independent factors to warrant submitting the question of knowledge and control to the jury. The prosecution's evidence reflected that marijuana was found in defendant's house; in a drawer, and in a clear plastic baggy on an end table in the living room. It was further proved that the house where the marijuana was found belonged to defendant. The evidence on behalf of the defendant reflected that numerous friends of the defendant frequented the house and a girl lived with defendant in the house; that defendant was not under the influence of marijuana, and none was found on his person when he was arrested; that defendant did not give false explanation or conflicting statements as to the presence of the marijuana; and that defendant did not attempt to destroy the marijuana. The jury chose to believe the evidence of the State. We have consistently held that where evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh such evidence and determine the facts. *Sutterfield,* supra.

Furthermore, the evidence of the State was sufficient to prove that the substances found in defendant's house were marijuana. The State introduced testimony from the arresting officers as to their specialized knowledge, acquired through study and practice, in the field of narcotics. The arresting officers were of the opinion that the substances found in defendant's house were marijuana. The weight and credibility of such testimony is a question for determination by the jury. See Harvell v. State, Okl.Cr., 395 P.2d 331 (1964).

■ As for the contention that defendant was not operating the radio, we need only note that defendant was in his house just prior to the time that the police officers arrived with a search warrant, and that when the officers entered defendant's house, the radio, which was in obvious view, was tuned into and was broadcasting on the Oklahoma City Police Department frequency. Under these circumstances, it cannot be said that defendant was unaware of the existence of the radio nor could defendant be unaware that the radio was broadcasting on a police frequency. Operating a radio does not require constant manual control.

■ We also dispose of defendant's contention that reversible error occurred because the State did not introduce the receiver into evidence. Although the prosecution did not formally introduce the radio into evidence, the receiver that was being operated by defendant at the scene was in court and was identified by the arresting officers.

On the basis of the foregoing, we conclude that defendant's entire second proposition is without merit.

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.