**Scott GRAY et al., Appellants,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. M–76–745.**

Court of Criminal Appeals of Oklahoma.

March 1, 1977.

Lewis M. Watson, Ada, for Scott Gray, Peggy Clark, Barry Bryant, and L. J. Golden, Jr.

Miskovsky, Sullivan & Miskovsky, Oklahoma City, for Paul W. Boydstun.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Michael Darrah, Legal Intern, for appellee.

## OPINION

BLISS, Judge.

Appellants, Scott Gray, Peggy Clark, Paul W. Boydstun, Barry Bryant and L. J. Golden, Jr., hereinafter referred to as defendants, were charged in the District Court, Pontotoc County, Case No. CRM–76–110, with the offense of Possession of Marijuana. These defendants, along with one other, were conjointly tried to a jury, and convicted. Punishment was assessed at one (1) year imprisonment in the County Jail. From said judgments and sentences, the above named defendants have perfected a timely appeal to this Court.

Richard Hubble was the first witness for the State. He testified that on the night of April 9, 1976, at approximately 12:15 a.m., he was in a private vehicle in connection with his duties as a private security guard, a job which he held to supplement his income as a City of Ada, Oklahoma, police officer. While engaged in such private capacity, he observed an automobile traveling without tail lights. Using a walkie talkie he contacted an on duty Ada police officer named Williams, and notified him of his observations.

Bob Williams was the State's second witness. He stated that on the evening of April 9, 1976, he was on routine patrol as an officer of the City of Ada Police Department, when he received a radio call from Hubble, the substance of which was that Hubble had observed an auto with no tail lights. Officer Williams related from the stand how he had located the car without tail lights, how he followed it, and how he pulled in behind the car when it parked behind another car. Officer Williams stated that as he approached the auto on the driver's side he noticed the odor of what he believed to marijuana. He shined his flashlight into the interior, and noticed a home rolled cigarette butt in the ashtray. He then asked all occupants to step from the car, which they did. While the occupants were standing in front of the car, Officer Williams examined the contents of the ashtray, which contained five home-rolled cigarette butts, which he seized. Officer Williams also seized from the right front seat several small leaf particles. Both the cigarette butts and the leaf particles were placed by him in an envelope. The witness also stated that he found in the car a glass containing a small amount of beer as well as another empty glass. All six occupants were then arrested for Possession of Marijuana. A further search of their person revealed nothing of an illegal nature.

Officer Williams identified all six defendants as the occupants of the car, although he was unable to identify two of the defendants by name in court. The witness also stated that it was his opinion that each occupant of the car was under the influence of marijuana. He based his opinion on what he described as the occupants' unsteady stance, glassy eyes, and slurred speech. On cross-examination the witness was asked if he smelled marijuana on the persons of the defendants, to which the witness replied in the negative. The witness also stated that he did not notice any odor of alcohol about the defendants' persons. The witness was further asked on cross-examination what led him to believe that the defendants were intoxicated on marijuana rather than alcohol, since the symptoms which he described could be used to describe one intoxicated on the latter. This question, and the witnesses' response thereto is reflected in the record as follows:

"Q. Okay. Now, the symptoms that you have spoken of, here, upon which you base your opinion that they were under the influence of marijuana, saving except the smell of marijuana, would be the same symptoms you would base an opinion of intoxication on, wouldn't you, alcoholic intoxication?

"A. No, sir, not exactly.

"Q. The stagger; unbalanced; slurred speech; glassy eyes; dilated pupils?

"A. Not exactly, no, sir.

"Q. What else would you have used? You used those four, anyway, wouldn't you?

"A. Yes, sir.

"Q. And what else would youuse? (sic)

"A. With marijuana, there is also a thickening of the saliva, and it will build up at the corner of the mouth, on the lips.

"Q. And that doesn't occur with drinking beer?

"A. I never noticed it, no, sir.

"Q. Okay. Now, which one of them had the thickening of the— —Did you run any kind of tests on that, or did you just look at that?

"A. You have to look.

"Q. It is not like a saliva test on a race horse, then, is it?

"A. No, sir.

"Q. Now, all six of them, I suppose had that?

"A. Yes, sir.

"Q. What do you mean, just kind of bubble up in the corner a little bit?

"A. Just build up, kind of around the corners of the mouth.

"Q. Inside or outside?

"A. Well, starts inside, but it builds up, usually, in the corner of the mouth."

The witness further stated that Scott Gray was driving the automobile, and that Peggy Clark was sitting next to him. The officer was unable to state where in the car the other occupants were seated. Lastly the witness stated that none of the defendants were given a breathalyzer test, and that no complaints other than possession of marijuana were lodged against any defendant.

Darrell Nemecek, Ada City Police Officer, was the State's third witness. He stated that on the night of April 9, 1976, he was on patrol with Officer Williams. His testimony as to what happened was largely corroborative of Officer Williams' testimony, except that he was able to state that he noticed the odor of marijuana about the person of each defendant on the night in question.

Dennis Smith was the State's fourth witness. He too, was an officer of the City of Ada Police Department, and substance of his testimony was that he received the evidence from Officer Williams, and transferred it to the State Crime Bureau.

Gerald Belyeu, forensic chemist with the Oklahoma State Bureau of Investigation, testified that State's Exhibit No. 2, which Officer Williams had identified as a yellow parking ticket envelope into which he had deposited the seized substance, contained five cigarette butts and a few leafy particles. Belyeu identified the contents of these five "roaches" as marijuana.

The State then rested.

After the State rested, the defendants moved to suppress the seized evidence, which motion was denied.

The first witness for the defense was James E. Jones, who stated that early in the evening of April 8, 1976, he was working in a club in Ada, Oklahoma, and that he observed defendant Dan Johnson drinking beer there.

Tandy Cartwright was the defense's second witness. She stated that on the evening of April 8, 1976, she observed several of the defendants in a club drinking beer.

Linda Taylor was the defense's final witness. On April 8, 1976, she too observed several of the defendants in the club drinking.

The defense then rested.

As forementioned, only five of the six defendants have perfected appeals to this Court. Within the three briefs presented by the defendants are contained four separate and distinct assignments of error which we shall consider as applicable to each defendant herein.

■ The first assignment of error which we shall discuss has been presented by all defendants who have filed briefs. The contention is that the State failed to present sufficient evidence upon which a conviction for Possession of Marijuana could be based. This contention is without merit. In order to prove possession of marijuana where, as here, the defendants are being charged conjointly with a possession of a drug which was not found on the person of any defendant, nor found in a place over which any defendant had exclu-

sive control, it is necessary to prove by competent evidence that the defendants, or either of them, exercise "dominion and control" over the drug allegedly possessed. *Brown v. State,* Okl.Cr., 481 P.2d 475 (1971). It is not enough that a defendant was in a place where the drug was found, if the defendant did not have exclusive excess to those premises. Knowledge of its existence and some right over its disposition must be shown, and may not be inferred from mere proximity in such a case. *Riggs v. State,* Okl.Cr., 486 P.2d 643 (1971).

However, we have held in *Patterson v. State,* Okl.Cr., 403 P.2d 515 (1965) that such dominion and control may be proven by circumstantial evidence. Herein, the arresting officers testified that the defendants were under the influence of marijuana, that there was an odor of marijuana in the car, and that the defendants' persons exuded the odor of marijuana. All of this is circumstantial evidence tending to show that each defendant had dominion and control over the marijuana which was seized. In *Patterson v. State,* supra, we specifically held that evidence of intoxication on marijuana was sufficient evidence to show dominion and control, and we herein reaffirm that position.

Defendants further contend that when circumstantial evidence is relied upon for a conviction, it must be such as to exclude every reasonable hypothesis, except that of guilt, citing *Brown v. State,* supra. They point out that there was evidence presented that defendants had been drinking and thus it is just as reasonable that the intoxication which the officers observed was induced by alcohol rather than marijuana; and that since alternative hypothesis exists, the circumstantial evidence of the defendants' intoxication is not such as to invariably and exclusively suggest their individual dominion and control over the seized substance. It must be noted, however, that this evidence was presented by the defendants, and when applying the rule that circumstantial evidence must be such as to exclude every reasonable hypothesis except that of guilt, it is the State's evi-

dence only that we must consider. Any conflict between the State's evidence and the defendant's evidence is for the jury's consideration. Herein, the circumstances which would tend to show that each defendant exercised dominion and control over the marijuana was their intoxication, which other circumstances indicated was induced by marijuana. The only evidence presented by the State which was inconsistent with the State's theory of marijuana intoxication was the single empty beer glass found in the car, which could be considered as tending to show that the intoxication of the defendants was induced by alcohol rather than marijuana. However, since only one glass was found, we hold that the State's evidence although circumstantial, was such as to exclude every reasonable hypothesis except that of guilt.

We thus conclude that there was sufficient evidence to show that each defendant exercised dominion and control over the seized drug, and there being such evidence, we cannot disturb the verdict of the jury on this account.

The defendants' second assignment of error is that the trial court erred in failing to suppress the evidence which formed the basis of the charge, on the grounds that it was procured during an illegal search and seizure. This contention is also, without merit. Upon approaching the car, Officer Williams detected an odor of marijuana, and observed in the ashtray partially burned hand-rolled cigarettes. Under the rule in *Ferguson v. State,* Okl. Cr., 520 P.2d 819 (1974), these observations constitute probable cause justifying the subsequent search. Additionally, it must be noted that the officers originally stopped the auto in which the defendants were riding for a traffic violation, and thus the initial arrest was upon a legally sufficient cause. Lastly, the fact that the officer used a flashlight to illuminate the contents of the ashtray does not render his observations of its contents illegal. *Elmore v. State,* Okl.Cr., 511 P.2d 595 (1973).

The third assignment of error is that the trial court erred in failing to grant

the severance requested by defendants, Boydstun, Bryant, and Golden. It has long been recognized that the decision to grant a severance is a matter left in the first instance to sound discretion of the trial court, and we will not disturb the trial judge's decision absent a manifest abuse of discretion. *Wright v. State,* Okl.Cr., 505 P.2d 507 (1973). Apparently, the three defendants who requested the severance were those seated in the rear of the car when it was stopped. They assert that since the elicit narcotic was found in the front ashtray, there was nothing to connect the defendants seated in the rear with marijuana, and thus, these defendants were found "guilty by association." However, this contention ignores the fact that the evidence at trial which tended to show all defendants' dominion and control over the drug was their intoxication on it, and not their relative degrees of physical proximity to it. We therefore find that there being no showing of prejudice to the defendants, it was not error to deny the requested severance.

 The defendants final assignment of error is that the sentence of one (1) year confinement in the County Jail is excessive. With this we agree, primarily because of the very small amount of marijuana which was seized, being the remains, or "roaches", of five marijuana cigarettes. See, *McCarty v. State,* Okl.Cr., 525 P.2d 1391 (1974), wherein we reduced a similar conviction from one (1) year to two (2) months incarceration, in view of the fact that the defendants therein had been previously law abiding, and in view of the fact that a small amount of marijuana had been seized. While it is true that the defendants herein have introduced no evidence relative to their good citizenship, it is also true that in *McCarty,* the amount of marijuana seized, two plastic baggies and one paper sack full, was considerably more than that seized herein. The sentence will accordingly be MODIFIED to sixty (60) days confinement.

The judgments and sentences appealed from, as MODIFIED are for the foregoing reasons, AFFIRMED.

BUSSEY, P. J., concurs.

BRETT, J., concurs in results.